UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **KEVIN B. McCARTHY, et al.,** ) | |
| ) | |
|   Plaintiffs, ) | |
| ) | |
|     vs. ) | CAUSE NO.  1:08-cv-994-WTL-DML |
| ) | |
| **PATRICIA ANN FULLER, a/k/a SISTER** ) | |
| **JOSEPH THERESE, et al.,** ) | |
| ) | |
|   Defendants. ) | |

### ENTRY ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This cause is before the Court on the Plaintiffs' motion for partial summary judgment (dkt. no. 73) against  Defendant Sister Mary Joseph Therese, nee Patricia Ann Fuller (hereinafter referred to as Defendant or Sister Mary Joseph Therese).  The motion is fully briefed, and the Court, being duly advised, **DENIES** the motion for the reasons set forth below.

### MOTION TO STRIKE

The instant motion was filed on February 19, 2010; under the applicable rules, the response was due on March 22nd.  On March 25th, the Defendant filed a belated motion seeking an extension of time until March 29th to file her response.  Over the Plaintiffs' objection, the Court granted the Defendant's motion.  The Defendant filed an abbreviated response shortly after midnight on March 30th.  Inexplicably, the Defendant then filed another, far longer response on March 31st.  The Defendant did not seek leave to file this second, clearly belated response. In their reply brief in support of the instant motion, the Plaintiffs move to strike the second response.  This motion is well-taken.  Counsel for the Defendant has already been admonished once by the Court regarding the importance of deadlines.  *See* Docket No. 47 ("The Court therefore expects counsel to ensure that she is aware of all applicable deadlines and that she

diligently adheres to them throughout the remainder of this litigation."). Further, while the Defendant filed a lengthy surreply, she does not address in any way the Plaintiffs' motion to strike. Accordingly, the motion to strike is **GRANTED**. The Defendant's second response to the instant motion (dkt. no. 95) is **ORDERED STRICKEN** from the record, and the Court has not considered it. In addition, while the Plaintiffs have not moved to strike the Defendant's first response, it is of no help to the Defendant; it contains no cogent argument and fails to provide any citation to the morass of documents attached to it. Accordingly, the Court has not considered that response, either, because there is simply nothing to consider. Inasmuch as there is no viable response from the Defendant, there was nothing for the Plaintiffs to reply to; accordingly, aside from the motion to strike contained therein, the Court has not considered the arguments made in the Plaintiffs' reply brief or the Defendant's surreply, and the Plaintiffs' motion to file a response to the surreply (dkt. no. 116) is **DENIED AS MOOT**.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## DISCUSSION

The issue before the Court, then, is whether based upon their motion and accompanying evidence, the Plaintiffs are entitled to the partial judgment they seek. The Plaintiffs move for summary judgment on two discrete issues. First, they argue that there is no genuine issue of fact regarding their claim for declaratory judgment on the issue of whether they are liable to Sister Mary Joseph Therese for copyright and/or trademark infringement. Specifically, the Plaintiffs argue that they cannot have infringed upon any copyright and/or trademark rights of Sister Mary Joseph Therese because she does not own any. In support of this argument, the Plaintiffs assert the following facts:[1]

1. Mildred Marie Neuzil (hereinafter referred to as Sister Neuzil) was formerly a Catholic religious sister, of the type known as a cloistered nun, within the Sisters of the Precious Blood Convent located at Dayton, Ohio. She was at that time known as Sister Mary Ephrem.

2. As a member of the Sisters of the Precious Blood, Sister Neuzil took vows of chastity, poverty, and obedience in 1933.

3. Beginning in 1956, while a member of the Sisters of the Precious Blood, Sister

---

[1] There are several other facts asserted by the Plaintiffs; however, only these are properly supported by citation to admissible evidence. Some of these facts were not properly supported in the Plaintiffs' original brief, but are included here because they were properly supported by evidence submitted along with the Plaintiffs' reply brief.

>
> Neuzil had a series of private revelations of apparitions of the Blessed Virgin Mary as "Our Lady of America."
>
> 4. After Sister Neuzil had these revelations, she transcribed the messages that were imparted by Our Lady of America into a diary.
>
> 5. A booklet containing the Writings was originally created in 1960, with a subsequent version created in 1971.[2]
>
> 6. At the request of Archbishop Paul Leibold sometime in the 1960s, medallions bearing the likeness of Our Lady of America and a statue of that likeness were created.
>
> 7. At the time the diary, medallions, and statue were created, as well as the time when the phrase "Our Lady of America" and the representation of her were first used, Sister Neuzil was under a vow of poverty.
>
> 8. Sister Neuzil was dismissed from religious vows on or about August 11, 1982.

The Plaintiffs argue that because Sister Neuzil was under a vow of poverty when she created the diary and the likeness of Our Lady of America and when the medallions and statue were created, she "could not acquire any property as a private individual, including but not limited to intellectual property rights . . . . Rather, only her convent, monastery, or some other Catholic Church entity could own anything that came into her possession." Plaintiffs' Brief at

---

[2] The Court notes that this assertion of fact and several others were not supported by admissible evidence in conjunction with the Plaintiffs' motion. However, the Court has considered them because the Plaintiffs submitted admissible evidence in support of them along with their reply brief.

5.[3] There are at least three flaws in this argument.

First, the Plaintiffs' argument is based upon the premise that Sister Mary Joseph Therese alleges that she obtained her copyright and trademark rights from Sister Neuzil. In fact, however, she so alleges only with regard to copyrights obtained by Sister Neuzil, and specifically a copyright Sister Neuzil registered in 1989 for a 48-page version of her diary. Although the Plaintiffs acknowledge in their statement of facts that Sister Mary Joseph Therese applied for and received trademarks relating to Our Lady of America in 2003, they inexplicably fail to recognize that fact in their argument. The trademark infringement claims of Sister Mary Joseph Therese are based upon these registered trademarks, not upon anything received by Sister Mary Joseph Therese from Sister Neuzil. A registered mark is presumed to be valid pursuant to 15 U.S.C. § 1057(b), and the fact that the image and phrase were used over forty years ago by Archbishop Paul Leibold is not, by itself, sufficient to overcome that presumption.

Next, with regard to the alleged copyright infringement, the Plaintiffs' argument is flawed because the Plaintiffs have failed to demonstrate that the copyrights at issue originated during the time Sister Neuzil was a nun subject to a vow of poverty. As noted above, Sister Mary Joseph Therese refers in her counterclaim to a copyright that Sister Neuzil obtained in 1989, which was, according to the Plaintiffs' statement of facts, many years after she was dismissed from her religious vows. It is impossible to determine based on the record currently before the Court whether that copyright is valid and enforceable, but one thing is clear: it was not obtained while Sister Neuzil was subject to a vow of poverty.

---

[3] The Plaintiffs assert this as a fact; it is not. Rather, whether Sister Neuzil could acquire property and whether she did, in fact, acquire particular property or property rights are mixed questions of law and fact.

Finally, to the extent that Sister Mary Joseph Therese's infringement claims are based upon any intellectual property rights which did arise during the time Sister Neuzil was subject to a vow of poverty, the Court believes the Plaintiffs have oversimplified the issue of whether Sister Neuzil owned those rights. The Plaintiffs argue that due to her vow of poverty Sister Neuzil could not own any intellectual property rights associated with Our Lady of America.[4] Actually, the applicable provision of the constitution of the convent to which Sister Neuzil belonged at the relevant time provides as follows: "A sister, superiors not excluded, must hand over to the Institute, to which it belongs as common property, anything she may acquire in the Institute by personal industry or in the interests of the Institute." Therefore, Sister Neuzil did, in fact, own any intellectual property rights at the time they came into being. The fact that she may have been required by her vows to "hand over" those rights does not mean that she actually did so. Perhaps she was wholly ignorant of intellectual property law and had no idea that she "owned" any such rights, in which case it would have been impossible for her to take the action of "handing them over." Or perhaps she intended to hand them over, but failed to take the actions necessary to effectuate a transfer or intellectual property rights as a matter of law. The point is that the vow of poverty taken by Sister Neuzil did not, as the Plaintiffs assume, have the effect of automatically transferring any property she acquired to her convent or "some other Catholic Church entity"; that transfer required an action by her–she had to "hand over" the

---

[4] Actually, the precise nature of the Plaintiffs' argument changed between their original brief and their reply brief. Along with their original brief, the Plaintiffs submitted the affidavit of Sister Nancy Mathias, who stated that as a result of her vow of poverty Sister Neuzil "could not own any property." The Plaintiffs later submitted the "revised" affidavit of Sister Nancy Mathias along with their reply brief, in which she states that Sister Neuzil could not own "any property that she acquired by personal industry or in the interests of [her] cloister."

property. Simply because one takes a vow does not mean that one complies with all of the requirements of that vow. Accordingly, in order to demonstrate that Sister Neuzil did not own the intellectual property rights relating to the writings and art work she created while she was subject to a vow of poverty, the Plaintiffs will have to demonstrate that a legally recognizable transfer of those rights occurred. Because they have not attempted to do so, their motion for summary judgment on the copyright and trademark infringement issue is **DENIED**.

The second discrete issue on which the Plaintiffs seek summary judgment is "the fact that Fuller made misrepresentations to Plaintiffs regarding her status as a Catholic nun and her operation of a Catholic convent." Plaintiffs' Brief at 2. The Plaintiffs seek a ruling on this issue pursuant to Federal Rule of Civil Procedure 56(d)(1), which provides that "[i]f summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue." While the language of the rule perhaps is broad enough to encompass the type of ruling sought by the Plaintiffs, the Court does not believe that such motions–that is, motions for partial summary judgment that will not resolve any claim or defense in its entirety–are an efficient use of the Court's time. Rather, the Court believes that the better interpretation of Rule 56(d)(1), or at least the better practice, is that in the course of explaining why a motion for summary judgment directed to a particular claim or defense cannot be granted, the Court should set forth which material facts remain for trial and which do not. Because the Plaintiffs do not seek summary judgment on any of their fraud-based claims–and especially in light of the fact that they do not attempt to articulate in their motion the materiality of Sister Mary Joseph Therese's status within the Catholic church to their claims–the Court declines the Plaintiffs' invitation to address the issue at this time.

**REQUEST FOR ATTORNEY CONFERENCE**

Within their motion to file a response to the Defendant's surreply, the Plaintiffs object to certain "grave (and false) allegations" made within the surreply that they argue "go far beyond the accepted bounds of legal advocacy" and ask the Court to "hold an attorneys' conference at the first convenient opportunity to address these unsupported accusations and uncivil behavior with Defendants and their counsel and to ascertain whether these accusations come from Defendants, their counsel, or both." The Court, of course, has no way of knowing whether the accusations at issue are true, and an "attorneys' conference" is not a fact-finding forum and therefore is unlikely to be of any assistance in that regard. The Court does know, however, that many, if not all, of the accusations contained in the surreply are not relevant to the issues raised in the instant motion for summary judgment and that the overall tone of the surreply is unacceptable. Even if the allegations in question are true (or believed by counsel to be true), there is simply no place for the type of virulence contained in the surreply. The Court expects better of the lawyers who appear before it. Accordingly, the surreply is **ORDERED STRICKEN** and counsel for the Defendant is admonished to ensure that all future filings are free from unnecessary rhetoric, irrelevant allegations, and all other forms of incivility.

**CONCLUSION**

For the reasons explained above, the Plaintiffs' motion for partial summary judgment (dkt. no. 73) is **DENIED**. The Defendant's second response to that motion (dkt. no. 95) and surreply (dkt. no. 113) are **ORDERED STRICKEN** from the record. The Plaintiffs' motion for leave to file a response to the surreply (dkt. no. 116) is **DENIED AS MOOT**.

The Court believes that in light of these rulings the stay issued in this case should be

lifted.[5]  To that end, the Court requests that Magistrate Judge Debra McVicker Lynch hold a status conference at her earliest convenience to establish new deadlines, including a deadline for answering the amended counterclaim.  Until such conference is held and an order is issued by Magistrate Judge Lynch, this case remains stayed.

   One final note.  The Court has expended a substantial amount of time and effort in addressing a barrage of motions filed by the Plaintiffs which, in the end, failed to advance this litigation in any way.  In the future, counsel should endeavor to file a motion only after careful consideration of both the merits of that motion and whether the interests of justice–which includes the efficient use of the Court's limited resources–would be advanced by filing it.  Further, in crafting responses to motions, counsel should avoid injecting irrelevant issues into the proceedings and otherwise unnecessarily complicating what promises to be a complex case under the best of circumstances.  Finally, as already noted, adherence to the standards of civility by counsel, which is always important, is especially important in cases such as this one.

   SO ORDERED: 06/03/2010

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.

---

[5]The Court is aware that the Plaintiffs' Motion for Rule 11 Sanctions (dkt. no. 70) remains pending; it will be ruled upon in due course.  However, the resolution of that motion will not affect the claims and defenses at issue in this case.