UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN B. McCARTHY, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|      vs. | )   CAUSE NO.  1:08-cv-994-WTL-DML |
| | ) |
| PATRICIA ANN FULLER, a/k/a SISTER | ) |
| JOSEPH THERESE, et al., | ) |
| | ) |
|    Defendants. | ) |

## ENTRY ON MOTION TO STAY AND MOTION TO CONTINUE

This cause is before the Court on the Plaintiffs' Motion for Stay of Proceedings (dkt. no. 204) and their Emergency Motion for Continuance (dkt. no. 322).  The Court, being duly advised, **DENIES** both motions for the reasons set forth below.

## MOTION TO STAY

This case was filed by the Plaintiffs on July 25, 2008.  More than three years later, on December 28, 2011, the Plaintiffs moved to stay this case because they had, on November 12, 2011, submitted a petition to the Congregation for the Divine Worship and Discipline of the Sacraments of the Apostolic See ("the Congregation") seeking a declaration that the Catholic Church ("the Church") owns certain items (hereinafter referred to as "the Items") that Defendant Sister Mary Joseph Therese, nee Patricia Ann Fuller (hereinafter referred to as "Defendant") alleges in this litigation that she owns.[1]  To the extent that the question of whether a stay is appropriate to permit the Plaintiffs to pursue the declaration they seek from the Congregation lies within the discretion of this Court, there is no question as to the Court's answer.  The

---

[1]In their Reply in support of the instant motion, the Plaintiffs also refer to certain intellectual property rights that are at issue in this case; however, the Plaintiffs' petition to the Congregation does not mention the intellectual property rights.

purported importance of the declaration sought by the Plaintiffs to the Plaintiffs' case is belied by the fact that the Plaintiffs waited more than three years to lodge the petition with the Congregation.  It is time to bring this case to a resolution; a stay would simply further delay that.

The Plaintiffs argue, however, at least implicitly, that the Court does not have discretion to deny the stay they seek on this basis because this Court "does not have jurisdiction to decide certain ecclesiastical issues,"  Plaintiffs' Reply at 1, and lack of subject matter jurisdiction may be raised at any time in a case.  There is no question that the Court has subject matter jurisdiction over this case, however, because  "[j]urisdiction is determined by what the plaintiff claims rather than by what may come into the litigation by way of defense." *Schleicher v. Salvation Army*, 518 F.3d 472, 778 (7th Cir. 2008) (holding it was appropriate for court to dismiss case to avoid entanglement in an ecclesiastical controversy, but error to do so on jurisdictional grounds).

That said, however, it is true that "'the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes.'"  *Serbian Eastern Orthodox Diocese for U. S. of America and Canada v. Milivojevich,* 426 U.S. 696, 709 (1976) (quoting *Presbyterian Church v. Hull Church*, 393 U.S. 440, 449 (1969)).  Therefore "whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them."  *Id.* at 711 (citation omitted).

The Plaintiffs urge the Court to find that this is such a case–that the issue of the ownership of the Items is an "important ecclesiastical issue" with which this Court may not interfere.  Rather, the Plaintiffs argue, the Court must wait for, and then abide by, the

Congregation's[2] decision on the issue.  The ecclesiastical issues identified by the Plaintiffs all relate to whether the person from whom the Defendant alleges she inherited some or all of the Items, Sister Neuzil (referred to by the Plaintiffs as Sister Ephrem), herself owned the Items at the time of her death, or whether those Items belonged to the Church because Sister Neuzil acquired them while subject to a vow of poverty.[3]  Specifically, the Plaintiffs identify the following issue as both ecclesiastical and relevant to this case:

    a.    The nature, meaning, and extent of the vows taken by Sister Ephrem;

    b.    The effect of Sister Ephrem's vows on her ability to own property, including the Devotional Items;

    c.    The interpretation of the statutes of different religious orders, including the statutes of the Congregation of the Sisters of the Precious Blood and the statutes of the Contemplative Sisters of the Precious Blood;

    d.    Sister Ephrem's ability to take property created during her religious life when she left the Congregation of the Sisters of the Precious Blood;

    e.    The effect on ownership of the Devotional Items caused by Archbishop Leibold's support of the Devotion, approval of the Devotional Items, and payment for

---

[2]The Court is assuming, without deciding, that the Plaintiffs are correct in their assertion that the Congregation has the authority within the Church to issue the type of declaration they seek regarding the Items.

[3]The Court continues to believe that the Plaintiffs overstate the importance of whether the Defendant *owns* the Items.  "It has long been a principle of common law that one in possession of property has the right to keep it against all but those with a better title."  *Government of Virgin Islands v. Edwards*, 903 F.2d 267, 273 (3rd Cir. 1990) (citing *Anderson v. Gouldberg*, 51 Minn. 294, 53 N.W. 636 (1892), citing *Armory v. Delamirie*, 1 Strange 504, 93 Eng. Reprint 664); *see also Computers Unlimited, Inc., v. Midwest Data Systems, Inc.*, 657 N.E.2d 165 (Ind. App. 1995) (tort of conversion includes exercising dominion over property "in exclusion or defiance of the rights of the owner *or lawful possessor*").

Devotional Items; and

f.      Whether or not certain physical items were publicly venerated and the effect of

such public veneration.

Plaintiffs' Reply at 5-6.

The Court disagrees that these are questions that it may not decide without running afoul

of the First Amendment.  Unlike the cases cited by the Plaintiffs, this case simply does not

involve "controversies over religious doctrine or practice."  *Cf. Serbian E. Orthodox Diocese v.*

*Milivojevich,* 426 U.S. 696, 713 (1976) (involving issue of whether removal and defrockment of

bishop was in accordance with church procedure); *Watson v. Jones*, 80 U.S. 679 (1871)

(involving use of property held by local church after split of members); *McEnroy v. St. Meinrad*

*School of Theology*, 713 N.E. 2d 334 (Ind. App. 1999) (involving dismissal of theology

professor from Catholic seminary for "publicly dissenting from the Pope's teachings);  *Marich v.*

*Kragulac*, 415 N.E.2d 91 (Ind. App. 1981) (involving "ecclesiastical thicket" of whether a party

had "performed schismatic acts amounting to a withdrawal from the Mother Church"); *see also*

*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 132 S. Ct. 694, 704

(2012) (noting that Supreme Court decisions involving disputes over church property "confirm

that it is impermissible for the government to contradict a church's determination of who can act

as its ministers").  There is no possibility that anything that happens in this case will interfere

with the Church's religious endeavors.  Indeed, this case does not implicate the property rights of

the Church at all; the Church is not a party to this suit, and thus will not be bound by any

decision that may be made here with regard to the ownership of the Items.

Rather, unlike the cases cited above, all of the questions the Plaintiffs identify as

ecclesiastical are actually questions that–to the extent they are relevant to this case–may be

4

decided by application of neutral principles of contract and property law.  The application of these neutral principles of law to the issues in this case will not violate the First Amendment, as there is no indication that it will be necessary to resolve any "religious controversy" in order to determine the import of Sister Ephrem's vow of poverty on her ability to own or possess the Items.  *See Jones v. Wolf*, 443 U.S. 595, 604 (court may examine religious documents, such as church constitution, to resolve dispute without running afoul of First Amendment as long as "the interpretation of the instruments of ownership would [not] require the civil court to resolve a religious controversy").[4]

The Plaintiffs have not demonstrated that a stay in this case pending a determination by the Congregation is either constitutionally required or otherwise in the interests of justice.  Accordingly, the motion to stay is **DENIED**.

## MOTION TO CONTINUE

The Plaintiffs move to continue the trial on two grounds.  The first has been mooted by the Court's ruling on the motion to stay.  The second boils down to a plea that there is just too much that remains to be done between now and the June 4, 2012, trial date.

As the Court made abundantly clear to the parties during the January 18, 2012, status conference, it is time for this case to be resolved, and the Court intends to resolve it in June 2012.  Nothing in the Plaintiffs' motion to continue changes the Court's position.  Quite frankly, the Court has little sympathy for the position the Plaintiffs find themselves in on the eve of trial.

---

[4]Indeed, it is not particularly unusual for a court to determine the import of a vow of poverty on legal questions, particularly in the tax arena.  *See, e.g.*, *Schuster v. C.I.R,* 800 F.2d 672 (7th Cir. 1986); *Fogarty v. United States*, 780 F.2d 1005 (Fed. Cir. 1986); *Estate of Callaghan v. C. I. R.*, 33 T.C. 870, 872 (Tax Court 1960) (discussing difference between solemn vows and public vows); *see also Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322 (9th Cir. 2000) (involving intellectual property).

This case has been pending for almost four years; there has been plenty of time to accomplish all necessary discovery and briefing.  Indeed, the parties were specifically warned at the status conference that they should not expect continuances to be granted and that, given the parties' propensity for seeking extensions of time to brief motions, they should realize that they may not receive rulings on partially-dispositive motions prior to trial.[5]  The motion to continue is, accordingly, **DENIED**.

To the extent that there are scheduling disputes regarding trial depositions that need to be taken, those should be brought to the attention of Magistrate Judge Lynch promptly; at this point, counsels' schedules simply will have to be arranged in such a way as to get the necessary work done to get this case to trial.  To the extent that counsel are waiting for rulings from other courts, counsel should be sure to inform those courts of the impending trial date.  Counsel for both sides also should seriously consider whether each deposition they are seeking to take actually is necessary for the resolution of the issues in this case.

SO ORDERED:  04/11/2012

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[5]That said, the Court notes that most of the pending motions are now fully briefed and the Court will endeavor to issue rulings on them as far in advance of trial as possible.