**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **KEVIN B. McCARTHY, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **CAUSE NO. 1:08-cv-994-WTL-DML** |
| ) | |
| **PATRICIA ANN FULLER, a/k/a SISTER** ) | |
| **JOSEPH THERESE, et al.,** ) | |
| ) | |
| Defendants. | |

**ENTRY ON COUNTERCLAIM DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This cause is before the Court on the motion for partial summary judgment filed by Counterclaim Defendants Kevin B. McCarthy, Albert H. Langsenkamp, BVM Foundation, Langsenkamp Family Apostolate, and Sigma Micro Corporation (collectively referred to hereafter as "Counterclaim Defendants") (dkt. no. 226). The motion is fully briefed and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion for the reasons set forth below.

**I. SUMMARY JUDGMENT STANDARD AND INADEQUACY OF
COUNTERCLAIMANTS' RESPONSE TO THE INSTANT MOTION**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the evidence properly presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences

in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

The Court has set out the above paragraph, or its substantive equivalent, in countless summary judgment rulings throughout the years. Most of the time it serves simply as a *pro forma* reminder to the reader of the standard under which the parties and the Court operate with regard to summary judgment. In this case, however, that standard plays a rather larger role than usual given the unconventional nature of the Counterclaimants' response to the instant motion. Rather than filing a brief that responds directly to the factual assertions and legal arguments contained in the motion for summary judgment, the Counterclaimants rather curiously make the statement that "[g]iven the broad sweep of the *Motion* and the voluminous quantity of evidence that defeats the *Motion*, the simplest and clearest way to present the evidence concerning the "Material Facts in Dispute" is by means of a spreadsheet chart." Counterclaimants' Response at 18 (italics in original). As the Counterclaimants describe it:

> This spreadsheet lists the section and number of the alleged "undisputed facts" in the Motion. In the next column of the spreadsheet, alongside each alleged "undisputed fact," is a statement of the true facts, as supported by the evidence, or, in some instances a statement of the grounds for asserting that the Movants failed to prove their "fact" by admissible evidence. Finally, in the third column, are citations to the evidence that disproves the alleged "fact" and that proves the true facts asserted by the Counterclaimants.

*Id.*

The problem is that the information contained on the spreadsheet (hereinafter referred to

2

as "the Chart") is far from "clear," and therefore ascertaining its relevance to the issues at hand is far from "simple." An additional problem is that the Counterclaimants essentially have made no response at all to the legal arguments contained in the Counterclaim Defendants' brief.

The Counterclaim Defendants argue that the response brief and accompanying exhibits, including the Chart, should be stricken, or at least entirely disregarded, by the Court[1] because "[i]n essence, the Counterclaimants have merely stated their Position in a narrative form, submitted 151 to 181 unexplained (and mostly unauthenticated)[2] exhibits, and asked that the Court piece it all together." Reply Brief at 3. This is, indeed, an apt description of what the Counterclaimants have done. The Court has not disregarded the Counterclaimants' response in its entirety, however, but rather–as will be apparent throughout the discussion below–has considered the Counterclaimants' response while at all times remaining mindful that "'it is not this court's responsibility to research and construct the parties' arguments.'" *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) (quoting *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir.2002)).

---

[1]The Counterclaim Defendants correctly made this argument within their reply brief rather than filing a separate motion to strike in accordance with Local Rule 56-1(i).

[2]To the extent that the Counterclaim Defendants argue that virtually all of the exhibits cited to by the Counterclaimants should be stricken simply because they are not properly authenticated, the Court believes that argument is without merit in light of the amendments to Federal Rule of Civil Procedure 56 that postdate the cases cited by the Counterclaim Defendants. Pursuant to Rule 56 as amended, materials submitted in response to a motion for summary judgment need only be *capable* of being presented in a form admissible at trial. Rule 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). The Court therefore has disregarded the bulk of the Counterclaimants' exhibits not because they are unauthenticated, but rather because they were submitted without any discernible explanation as to their relevance and unaccompanied by any cogent legal argument.

## II. DISCUSSION

The Counterclaim Defendants seek summary judgment on several distinct issues relating (for the most part) to the counterclaims of Counterclaimants Sister Mary Joseph Therese, nee Patricia Ann Fuller (hereinafter referred to as Fuller) and Paul M. Hartman. Each of the issues raised by the Counterclaim Defendants is addressed, in turn, below.

### A. The Status of Fuller within the Catholic Church

The Counterclaim Defendants argue that this Court is without jurisdiction to determine Fuller's status within the Catholic Church–that is, whether she is a Catholic nun–because this is an ecclesiastical issue that has been determined by the Church and the First Amendment requires the Court to defer to the Church's determination. When the Plaintiffs raised this issue in an earlier motion, *see* Plaintiffs' Request for Judicial Notice (dkt. no. 151)[3], the Court ruled that the Plaintiffs had not made the requisite showing that a determination had been made by the appropriate authority within the Church such that deference by the Court to that determination was appropriate. The Plaintiffs have now filed a Renewed and Supplemental Request for Judicial Notice (dkt. no. 317) in which they purport to provide the information the Court found lacking the first time around. The Court therefore will address this issue by ruling on the renewed motion for judicial notice when it is fully briefed, rather than in the context of the instant motion for partial summary judgment.

---

[3]That was actually the second time the Plaintiffs raised the issue. The first time was in an earlier motion for partial summary judgment. In that motion, the Plaintiffs did not argue that the Court lacked jurisdiction to make a determination regarding Fuller's status within the Catholic Church. In fact, they asked the Court to make that very determination based upon the evidence of record, *see* Docket No. 74, although they did make the conclusory argument in their reply brief that the testimony (via affidavit) of Sister Nancy Mathias, a representative of the Bishop of the Diocese of Toledo, that Fuller had not been a Catholic nun since 1982 was "binding" on the Court. *See* Docket No. 102.

## B. The Ownership of Certain Property

The Counterclaim Defendants also argue that the Court must defer to the Catholic Church with regard to the issue of who owns certain property, an issue which is highly relevant to many of the claims in this case. The Court already has addressed and rejected that argument in ruling on a motion to stay filed by the Counterclaim Defendants. *See* Docket No. 326. Nothing in the instant motion suggests to the Court that it would be appropriate to reconsider that ruling. Accordingly, the motion for partial summary judgment is denied as to that issue.

## C. Defamation Claims of Counterclaimant Hartman

Counterclaimant Hartman asserts a claim against the Counterclaim Defendants for defamation. In his initial response to the Counterclaim Defendants' interrogatories, Hartman identified 100 statements as being defamatory; however, he conceded in his deposition that none of those statements defame him personally, but rather were defamatory as to Fuller. Specifically, the Counterclaim Defendants point to the following testimony from Hartman's deposition:

> Q: Do any of those 100 statements that – examples that you have set forth deal with alleged defamation as to you personally?
>
> A: No, they do not.
>
> Q: Okay.
>
> A: Because the question [in the relevant interrogatory] was framed in such a manner as to ask what I consider to be defamation, not with regard to me, what I consider to be defamation, and I answered the question honestly.
>
> Q: But as you sit here today, you would agree that none of those 100 examples reference defamation to you personally; is that right?
>
> A: Absolutely. That's correct. Yes. But 100 reference Sister Mary Joseph Therese.

Hartman Dep. at 530.

5

Hartman also served a supplemental response to the interrogatory in question in which he identified seven additional statements he alleged to be defamatory. Six of the statements in question appeared on a blog on a website operated by Third-party Defendant Larry Young. The author was listed as "anonymous" as to four of them, "J.D." as to one of them, "Miguel" as to one of them, and "Kendra" as to one of them. When asked what evidence he had that the statements were made by the Counterclaim Defendants, Hartman testified that he believed Young was the author of the statements, that the Counterclaim Defendants were involved in a criminal enterprise with Young, and that "the actions of one are the actions of all in a criminal enterprise." Hartman Dep. at 536. Hartman further testified that, other than the fact that the statements were published on Young's website, he had no evidence to support his belief that Young and/or the Counterclaim Defendants were the authors of the statements.

The Counterclaim Defendants correctly argue that "[f]undamentally, to maintain an action for defamation, the claimant must prove that the alleged defamatory statements were spoken by the defendant and about the claimant." Counterclaim Defendants' Brief at 18 (citing Ind. Code 34-15-1-1; *Associates Corporation of North America v. Smithley*, 621 N.E.2d 1116, 1118, 1120 (Ind. App. 1993); and *Mann v. Hauts*, 40 Ind. 122 (1872)).[4] The Counterclaim Defendants also correctly assert that Hartman concedes in his deposition that none of the 100 statements defamed him and that he had no evidence that the remaining statements were made by the Counterclaim Defendants.

In order to avoid summary judgment on his defamation claim, then, Hartman must demonstrate either that there is a genuine dispute regarding a material fact or that the undisputed

---

[4]The Counterclaim Defendants apply Indiana law to the defamation claims; in the absence of any argument to the contrary, the Court will as well.

facts fail to establish that the Counterclaim Defendants are entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Hartman has wholly failed to do so; indeed, the Counterclaimants' brief in response to the instant motion fails even to address the Counterclaim Defendants' legal arguments regarding Hartman's defamation claim. With regard to the facts asserted by the Counterclaim Defendants with regard to Hartman's defamation claim, the Chart contains five entries in the column labeled "TRUE FACTS, SUPPORTED BY EVIDENCE, DISPROVING MOVANT'S [sic] ALLEGED UNDISPUTED FACTS." The first reads "After receiving belated discovery, Inspector Hartman (Ret) has identified additional defamatory statements attributable to Counterclaim Defendants." The exhibit cited in support of this "fact" consists of what appears to be an email exchange between Young and the editor of something called "Catholic Truth." Even if the Court were inclined to consider this unidentified document, taking it at face value absolutely nothing in the document supports a defamation claim against the Counterclaim Defendants, as there is no indication that they authored the allegedly defamatory email contained in the document.

The second statement in the Chart regarding Hartman's defamation claim reads: "McCarthy, et al., have issued substantially more than 7 defamatory statements directed at Inspector Hartman (Ret.) as found in the 'First 100' examples." The exhibit cited in support of this "fact" consists of a compilation of excerpts from Hartman's initial interrogatory response in which certain words contained in some of the alleged defamatory statements–e.g. "they," "the Fostoria group," "the Fostoria backers"–are highlighted. The subtitle of the exhibit states that these references "were intended to, and, in fact, defame [Hartman]." However, the Counterclaimants present no evidence of any kind to support that bald assertion. They also do not address the import of Hartman's explicit deposition testimony to the contrary.

7

The third and fourth statements in the Chart regarding Hartman's defamation claim fare no better. Each asserts that the seven statements identified in Hartman's supplemental interrogatory response were published on Young's website or posted anonymously on other websites by Young. However, the Counterclaimants point to no evidence to support the assertion that Young posted any of the statements, and make no legal argument to suggest that Young (or the Counterclaim Defendants) can be liable for defamation based solely upon the fact that statements were posted by someone on Young's website.

The Counterclaimants simply have not pointed to any evidence or made any legal argument to refute the evidence submitted and arguments made by the Counterclaim Defendants with regard to Hartman's defamation claim.[5] Accordingly, the Counterclaim Defendants have demonstrated that they are entitled to summary judgment on that claim.

### D. Fuller's Defamation Claims

In response to discovery requests, Fuller identified 115 statements that she asserts defame her. The Counterclaim Defendants move for summary judgment with regard to several categories of statements, each of which is addressed, in turn, below.

*1. Statements the Counterclaim Defendants Assert Are True*

The Counterclaim Defendants assert that several of the allegedly defamatory statements are true and therefore cannot support a defamation claim. With regard to Statements 2, 6, and 10, the evidence cited by the Counterclaim Defendants to support their argument that the statements are true is Fuller's deposition testimony. The Court finds that the cited testimony,

---

[5]The Court need not address the fifth statement contained on the Chart, as it relates to an alternative argument made by the Counterclaim Defendants regarding the truth of certain statements contained in one of the anonymous website postings.

8

considered in context, does not constitute an admission by Fuller that Statements 2, 6, and 10 are true. Neither does the testimony and affidavit cited with regard to Statement 78 support a finding that the statement is true in its entirety. With regard to Statement 74, the Counterclaim Defendants have not provided the Court with the deposition pages to which they cite, so the Court is unable to review that testimony.

Statement 9 involves Fuller's status within the Catholic Church, and therefore the Court will not address the truth of that statement at this time.

That leaves Statements 8, 15, and 84 in this category. There seems to be no dispute regarding the truth of Statement 8.[6] With regard to Statement 15,[7] Fuller did, in fact, concede in her deposition that she had no evidence that the statement was false, and she has presented none in response to the instant motion. Fuller also conceded the truth of Statement 84 in her deposition–she does, in fact, believe that statement to be true.[8] Accordingly, the Counterclaim

---

[6] Statement 8 reads: "The Vicar General of the Diocese of Toledo-in-America on September 29, 2006, privately and personally warned Patricia Fuller about her actions and conduct in asserting that she was a religious sister and lived in a convent. Staff of Bishop Blair, in response to telephone inquiries made (since the beginning of 2008) to His Excellency at his office in the Diocese of Toledo-in-America, have openly and repeatedly stated that Patricia Fuller is no longer a nun or religious sister and does not live in a convent."

[7] Statement 15 is a statement in a letter that reads: "It has recently come to my attention that, when one calls your Chancery Office at Toledo to inquire about the individual who calls herself 'Sister M. Joseph Therese' of 'Our Lady of the Nativity Convent' at Fostoria, the reply is, Patricia Ann Fuller, although once a Catholic 'sister,' is no longer a sister or a nun, and that house she lives in is not a Catholic convent but a private residence."

[8] Statement 84 reads: "She [Fuller] is under the impression that because she was the unsupervised estate administrator for Sister Mary Ephrem (Mildred Neuzil) it gives her authority over the devotion derived from the private revelations of that holy nun which is to claim such authority is superior to the Catholic Church or to anyone else." Perhaps an argument could be made that the false part of this statement is the implicit suggestion that Fuller's "impression" is itself false. However, Fuller does not make this argument, and the Court declines to make it for her.

Defendants are entitled to summary judgment with regard to the issue of whether those three statements are defamatory.

### 2. *Statements that Involve Fuller's Status as a Nun*

The Counterclaim Defendants point to numerous of the allegedly defamatory statements and argue that they are not defamatory because they are premised on what they assert is a true fact–that Fuller is not a Catholic nun. The Court declines to address that argument at this time. That issue either will be resolved by the Court's ruling on the pending renewed motion for judicial notice or it will be a question of fact for the jury to determine at trial.

### 3. *Statements Not Attributable to the Counterclaim Defendants*

The Counterclaim Defendants move for summary judgment with regard to Statements 15-73[9], 79, 86-115 on the ground that they were not made by any of the Counterclaim Defendants. The Counterclaim Defendants have submitted evidence to support this claim as to each of these statements, and Fuller has not submitted any evidence to the contrary or articulated any legal argument that would suggest that the Counterclaim Defendants may be held liable for statements they did not make. Accordingly, the Court finds that the Counterclaim Defendants are entitled to summary judgment with regard to these statements.

### 4. *Statements that Counterclaim Defendants Argue are not Defamatory in Nature*

The Counterclaim Defendants argue that the remaining seven[10] of the 115 allegedly

---

[9]Statements 19-21 were made in a letter sent to Fuller by a bishop. Fuller asserts (via the Chart) that the letter was written by Counterclaim Defendant McCarthy for the bishop's signature. The exhibit that she cites for that proposition does not constitute evidence, however, and therefore even if drafting a letter for someone else's signature could constitute defamation, there is no evidence to support Fuller's assertion that that is what occurred here.

[10]All of the rest of the 115 statements fall into one of the previously discussed categories.

defamatory statements do not satisfy the definition of defamation. Under Indiana law, "[d]efamation is that which tends to 'injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff.'" *Haegert v. McMullan*, 953 N.E.2d 1223, 1230 (Ind. App. 2011) (quoting *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. App. 1999)).

> The determination about whether a communication is defamatory is generally a question of law for the court. The communication is to be viewed in context and given its plain and natural meaning, according to the idea that it is calculated to convey to whom it is addressed. However, the determination is to be presented to the jury if the communication is susceptible of either a defamatory or non-defamatory interpretation.

*Long v. Durnil*, 697 N.E.2d 100, 104-05 (Ind. App. 1998) (citations omitted).

The statements at issue are as follow:

Statement 1: January 15, 2008: Claims of control over all things Our Lady of America by Patricia Fuller a/k/a Sr. Joseph Therese proven invalid.

Statement 3: This is a great day for this devotion to Our Lady of America! It appears that erroneous assertion by Patricia Fuller may have held back the wide distribution of the messages for many years.

Statement 7: While the indications to us are that the vast majority of people do not take seriously the recent indication that Fuller is making a different statue, nonetheless, her obviously misguided action will confuse some of the faithful interested in Our Lady of America. A perfect example of this confusion is that as of the date of this email newsletter her site has portrayed an image of the Blessed Virgin Mary as Our Lady of Fatima not as Our Lady of America.

11

| | |
|---|---|
| Statement 11: | Neither I nor the BVM foundation make any claim of control over this devotion. In fact we encourage and support with information and devotionals all the lay faithful, many parishes and religious who in good faith promote this devotion for the glory of God. It is my opinion that Patricia Fuller and others working with her are not acting in good faith. |
| Statement 75: | The abuse of each of these documents, the letterhead of the Rotal Advocate, and the Will of Sister Millie, each constitutes fraudulent distortion and exaggeration. |
| Statement 81: | While the indications to us are that the vast majority of people do not take seriously the recent indication that Fuller is making a different statue, nonetheless, her obviously misguided action will confuse some of the faithful interested in Our Lady of America. |
| Statement 85: | It is my opinion that Patricia Fuller and others working with her are not acting in good faith. |

The Court cannot say as a matter of law that these statements are not defamatory; that is, the Court cannot say that the "idea [each statement] is calculated to convey to whom it is addressed" is not an idea that would "diminish [the readers'] esteem, respect, good will, or confidence in [Fuller]." Nor are any of the statements the type of statements of opinion that cannot constitute defamation; rather, they are "'expressions of "opinion" . . . [that] imply an assertion of objective fact,'" which can be defamatory. *See McQueen v. Fayette County School Corp.*, 711 N.E.2d 62, 66 (Ind. App. 1999) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990)). Accordingly, the Counterclaim Defendants are not entitled to summary judgment with regard to

these statements.

## E. Trade Dress Claim

Fuller has asserted a claim for trade dress infringement against the Counterclaim Defendants. In the instant motion, the Counterclaim Defendants assert that Fuller has failed to identify what the trade dress is that has been infringed. Specifically, the Counterclaim Defendants correctly note that in order to maintain a claim for trade dress infringement "'a party must first identify what particular elements or attributes comprise the protectable trade dress.'" Counterclaim Defendants' Brief at 27 (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 768 (6th Cir. 2005)). Fuller failed to make any such identification in response to the Counterclaim Defendants' interrogatories seeking such information, and she also has failed to make the necessary identification in response to the instant motion. Instead, Fuller simply points to certain trademarks and trade names, neither of which necessarily constitute protectable trade dress. Fuller quite simply has not even attempted to articulate her trade dress claim; she certainly has not pointed to any evidence that would support a finding that the elements of a trade dress infringement claim are present in this case. Accordingly, the Counterclaim Defendants are entitled to summary judgment on Fuller's claim for trade dress infringement.

## F. Copyright Claims

Fuller alleges that she owns the copyrights in a variety of works and asserts that the Counterclaim Defendants have infringed those copyrights. In the instant motion, the Counterclaim Defendants move for summary judgment on the very narrow issue of whether Fuller may pursue copyright infringement claims related to certain works that they allege are not covered by any registered copyright–specifically, a statue of Our Lady of America that was created in the 1970s in Latrobe, Pennsylvania ("the Latrobe statue"), the content of the

ourladyofamerica.com website ("the Website"), correspondence between Sister Ephrem and Archbishop Leibold ("the Correspondence"), and medallions depicting Our Lady of America ("the Medallions").

The Counterclaim Defendants are correct that the Copyright Act provides that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made," 17 U.S.C. § 411(a), and therefore a "prerequisite to bringing a suit for infringement is that a party register its copyright." *Wisconsin Interscholastic Athletic Ass'n v. Gannett Co., Inc.*, 658 F.3d 614, 620 (7th Cir. 2011).[11] Therefore the Counterclaim Defendants are correct that Fuller may assert copyright infringement claims only with regard to those works that are covered by a registered copyright.

In the Chart, the Counterclaimants list nine items in their "true facts" column. Only five of them appear to be relevant to the narrow issue raised by the Counterclaim Defendants. First are the statements "Sister M. J. T.'s copyright registration VAu 297-438 protects the sculpted image of the blessed mother under the title of Our Lady of America" and "Sister M. J. Therese's copyright registration VAu 297-438 protects the archival (Latrobe) statue of Our Lady of America." The exhibit listed on the Chart in support of those statements, Exhibit 121, consists of a certification that "the attached color photographs are a true representation of the work entitled Our Lady of America . . . registered under number VAu 297-438." In turn, Exhibit 117 indicates that copyright registration number VAu000297438 refers to a sculpture that was created in 1993. Therefore Exhibit 121 does not support the allegation that there is a registered

---

[11]The Counterclaim Defendants incorrectly argue that the registration requirement is jurisdictional. The Supreme Court held unequivocally in *Reed Elsevier, Inc. v. Muchnick,* 130 S.Ct. 1237, 1247 (2010), that it is not. The distinction is irrelevant to the resolution of the instant motion, however.

copyright relating to the Latrobe statue, and Fuller points to no other evidence with regard to that allegation.

Next, the Chart contains the following statement: "Sister M. J. Therese copyrighted the content of her website at www.ourladyofamerica.com by first use in publication." The exhibit cited to in support of that statement, Exhibit 112, consists of printed pages from the Website on which the statement "Copyright © 2007 Our Lady of America – All Rights Reserved" appears. Fuller does not explain how that exhibit refutes the Counterclaim Defendants' contention that there is no *registered* copyright relating to the content of the Website such that she has satisfied the prerequisite for bringing a copyright infringement claim relating to it.

Next, the Chart contains the following statement: "Sister M. J. Therese's copyright registration TXu 1-297-945 protects the correspondence between Sister Mildred and Archbishop 8Liebold [sic.]." The exhibits referred to in support of this statement, Exhibits 123 and 124, are simply certifications of the registration of the copyright in question. There is nothing in those exhibits that suggests that the copyright encompasses the Correspondence, and, in fact, the Counterclaim Defendants have submitted as their Exhibit EE a copy of the copyrighted material that plainly does not include the Correspondence, but rather consists of the diary of Sister Neuzil and two prayers. Fuller therefore has not submitted any evidence to support her contention that there is a registered copyright that relates to the Correspondence.

Finally, with regard to the Medallions, Fuller asserts (via the Chart) only that they are protected by a registered trademark. She makes no attempt to explain how this is relevant to her *copyright* infringement claim.

For the reasons set forth above, the Counterclaim Defendants are entitled to summary judgment with regard to Fuller's copyright infringement claims relating to the Latrobe statue, the

15

Website, the Correspondence, and the Medallions because there is no evidence that any of those works are covered by a registered copyright.

### G.  RICO Claims

Finally, the Counterclaim Defendants move for summary judgment on the Counterclaimants' claims brought pursuant to RICO and the Indiana Corrupt Business Influence Act.  The Counterclaim Defendants have also moved for judgment on the pleadings with regard to these claims.  The Court will address the arguments made in the instant motion with regard to these claims in its ruling on the motion for judgment on the pleadings.

### III.  CONCLUSION

For the reasons set forth above, the Counterclaim Defendants' motion for partial summary judgment is **GRANTED** with regard to the following issues:

1. Hartman's defamation claims;
2. Fuller's defamation claims with regard to Statements 8, 15-73, 79, 84, and 86-115;
3. Fuller's trade dress infringement claims; and
4. Fuller's copyright infringement claims with regard to the Latrobe statue, the Website, the Correspondence, and the Medallions.

The motion is **DENIED** in all other respects, except to the extent that certain issues raised in the motion will be addressed by the Court in other contexts as explained herein.

SO ORDERED:  04/24/2012

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification