UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN B. MCCARTHY, et al., ) | |
| ) | |
| Plaintiffs-Counterclaim Defendants, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-994-WTL-DML |
| ) | |
| PATRICIA ANN FULLER, et al., ) | |
| ) | |
| Defendants-Counterclaimants. ) | |

# Entry Following *In Camera* Review of Documents

The court's April 26, 2012 entry (Dkt. 358) directed the plaintiffs to submit for *in camera* review documents withheld from production as privileged clergyman-congregant communications. Only plaintiff Kevin B. McCarthy withheld documents on this ground and he submitted for *in camera* review the documents he has claimed as privileged, as directed by the court.

In its February 29, 2012 entry regarding various discovery matters (Dkt. 264), the court outlined the scope of the clergyman-congregant privilege recognized under Indiana law and under federal common law. This litigation combines federal and state law claims; thus, both federal and state law privileges may apply under Fed. R. Evid. 501. The court's research indicates that the analysis of the privilege is the same whether the court looks to Indiana law alone or more broadly to federal common law or other states' understanding of the scope of a clergyman privilege. The court's discussion of the privilege from its February 29, 2012 entry is repeated here.

## Governing Legal Standards

Indiana's codification of the clergyman-congregant privilege, at Ind. Code § 34-46-3-1, provides:

> Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications:
> . . .
>
> (3)  Clergymen, as to the following confessions, admissions, or confidential communications:
> (A) Confessions or admissions made to a clergyman in the course of discipline enjoined by the clergyman's church.
> (B) A confidential communication made to a clergyman in the clergyman's professional character as a spiritual adviser or counselor.

Clause 3(A) consistently has been applied by the Indiana Supreme Court to require a showing that the clergyman belongs to a church for which there is a "course of discipline" requiring a formal confession of sins and that the confession was made as part of that "course of discipline." *Bonhan v. State,* 644 N.E.2d 1223, 1225 (Ind. 1994); *Ball v. State,* 419 N.E.2d 137, 139-40 (Ind. 1981) (rejecting privilege where "pastoral confession" was not a tenet or discipline of the clergyman's church). Clause 3(B) was added to the statute in 1994, expanding the reach of the privilege, but the communications to the clergyman still must have been made in confidence and in the clergyman's "professional character as a spiritual adviser or counselor." *See* Robert A. Miller, 12 *Indiana Practice*, Indiana Evidence § 501.561 (3d ed.).

The privilege is narrowly construed, *Mullins v. State,* 721 N.E.2d 335, 338 (Ind. Ct. App. 1999), and the congregant must establish it, which requires some explanation of the nature and circumstances surrounding the communications at issue. *In re Commitment of J.B.,* 766 N.E.2d 795, 801 (Ind. Ct. App. 2002) (rejecting conclusory assertion that conversation with church deacon was privileged and requiring congregant to provide evidence "explaining the nature and circumstances of his communication"). At a minimum, Clause 3(B) requires a communication

akin to a pastoral confession or counseling session in which the congregant speaks to the clergyman in confidence because of the clergyman's capacity to give religious guidance and for the purpose of obtaining spiritual guidance and advice. *Mullins,* 721 N.E. 2d at 338 and n.4.

In *United States v. Dube,* 820 F.3d 886 (7th Cir. 1987), the Seventh Circuit implicitly recognized a federal common law clergyman privilege but rejected its application under the facts presented because the congregant had not sought tax avoidance, not spiritual, advice. Relying on the Supreme Court's discussion in *Trammel v. United States,* 445 U.S. 40 (1980), the court explained that because the privilege clashes with "the fundamental principle that the public has a right to every person's evidence," the privilege must be strictly construed and allowed only to the limited extent necessary for fulfilling the public good the privilege is designed to foster. *Dube,* 820 F.2d at 889 (citing *Trammel,* 445 U.S. at 50). In *Trammel,* the Supreme Court described the roots and purposes of the priest-penitent privilege: "The privilege[] between priest and penitent . . . limit[s] protection to private communications. [It is] rooted in the imperative need for confidence and trust. The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Id.* at 51.

Like *Mullins* and *Commitment of J.B.*, decisions of other courts applying a state or federal common law priest-penitent evidentiary privilege consistently construe the privilege strictly and require a showing, like that described in *Trammel,* of a confessional or counseling-type communication for the purpose of obtaining spiritual advice. *E.g., Cox v. Miller,* 296 F.3d 89, 104-06 (2nd Cir. 2002) (addressing New York's privilege); *Mullen v. United States,* 263 F.2d 275, 280 (D.C. Cir. 1959) (recognizing federal common law clergyman privilege). The presence of third persons is inconsistent with the privilege unless their presence is "indispensable" or

3

"essential" to the spiritual guidance and counseling involved, such as a family counseling session led by a clergyman.  *See People v. Campobello,* 810 N.E.2d 307, 321 (Ill. Ct. App. 2004); *In re Grand Jury Investigation,* 918 F.2d 374, 377 (3rd Cir. 1990).

### General Description of Documents and Circumstances
### Surrounding the Communications

All of the documents Mr. McCarthy asserts are privileged were either sent by Mr. McCarthy to Bishop David L. Ricken, or sent by Bishop Ricken to Mr. McCarthy.  The documents are organized in a notebook by tab numbers 1-34.  The documents behind tabs 1-14 are ones that Bishop Ricken produced to the defendants/counterclaimants pursuant to a subpoena but which Mr. McCarthy asserts are within the clergyman privilege.  He seeks an order clawing back those documents from the defendants.  One cannot tell by reading some of the documents under tabs 1-14 that they were ever in Bishop Ricken's hands (because they are copies of email communications between Mr. McCarthy and his lawyers in this case), but they apparently were given to Bishop Ricken, which is why he had them among his papers.  The documents at tabs 15 through 34 have not yet been produced to the defendants/counterclaimants.

### Analysis

Mr. McCarthy contends that the communications with Bishop Ricken are privileged because Bishop Ricken is his spiritual advisor in general, and Mr. McCarthy made a solemn vow to another clergy, Bishop Garcia, to promote the Our Lady of America Devotion.[1]  Mr.

---

[1] Mr. McCarthy's counsel's delivery of the documents to the magistrate judge for *in camera* review included a transmittal letter describing the organization of the documents and Mr. McCarthy's explanation regarding the circumstances surrounding the communications.  The letter states that "Bishop Ricken served as McCarthy's spiritual advisor prior to McCarthy's involvement with the Our Lady of America Devotion and continued in that role with regard to McCarthy's efforts with the Devotion.  McCarthy took a solemn vow with Bishop Garcia to assist in promoting the Devotion.  Moreover, Bishop Ricken has acted as McCarthy's advisor/counselor with regarding to McCarthy's calling to become a Deacon within the Catholic

4

McCarthy claims therefore that communications he had or shared with Bishop Ricken pertaining to this lawsuit or the Our Lady of America Devotion necessarily are ones "religious" in nature and protected by the privilege. The court does not agree. The clergyman privilege, like the attorney-client privilege, is not established merely by the presence or participation of clergy in the communication, or by funneling communications through clergy. Bishop Ricken's status as clergy with whom communications *may be* privileged does not make all communications with him privileged. As noted above, courts have consistently required a showing of a confessional or counseling-type communication made in *confidence* for obtaining spiritual advice uniquely available from one's clergyman.

The court has reviewed each and every communication submitted *in camera* as to which Mr. McCarthy asserts privilege. None of them comes even close to meeting the requirements for the privilege. Indeed, Bishop Ricken himself did not view any of these communications as confessional or spiritual.[2] None of them explicitly or implicitly seeks spiritual guidance, advice, or direction from Bishop Ricken. In fact, any guidance, advice, or direction in these communications flows the other way—from Mr. McCarthy to Bishop Ricken and others. In many of them, Mr. McCarthy urges actions on Bishop Ricken and seeks to persuade or enlist Bishop Ricken to take certain positions or actions—often to advance a litigation strategy Mr. McCarthy has devised. Other communications reflect Mr. McCarthy's sharing of news articles

---

Church and with regard to other unrelated religious matters." A copy of the transmittal letter is attached to this entry as Exhibit 1.

[2] Counsel for defendants/counterclaimants submitted to the magistrate judge via email a copy of Bishop Ricken's September 12, 2011 letter to Mr. McCarthy's counsel communicating this view. Counsel's email was improper. Absent specific direction from the court (as with settlement submissions, for example), litigants cannot use email to bring matters to the court's attention; documents must be properly filed and served as required by the federal and local rules. The court therefore directs its filing by making it Exhibit 2 to this order.

with Bishop Ricken—as friends might do.  And some of them indicate Mr. McCarthy's copying of Bishop Ricken on emails to other persons in which Mr. McCarthy has mentioned Bishop Ricken—a common courtesy in communications.

As noted above, a great many of the communications are also litigation-centric and are focused on this lawsuit.  In them, Mr. McCarthy urges Bishop Ricken and other officials within the Catholic Church to take actions aimed at affecting these proceedings.[3]  Many suggest or report litigation strategies and ideas.  They have the character of typical attorney-client (or attorney-attorney) communications, but Bishop Ricken is not Mr. McCarthy's lawyer.

Based on the applicable legal principles and the court's review of the documents, the court finds that none of them is protected from disclosure by a clergyman privilege, either as recognized under Ind. Code § 34-46-3-1 or federal common law.

Mr. McCarthy is ORDERED to produce these documents within seven days of the date of this order. The production must include the attachments referenced in the emails at tabs 24-28 but which were not included in the notebook delivered to the magistrate judge.

So ORDERED.

Date:  05/03/2012

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

---

[3]  One of those communications, for example, reveals Mr. McCarthy's attempt to circumvent this court's February 29 order.  That order established a procedure for addressing the very privilege claims considered in this order, a procedure that directed Mr. McCarthy's counsel to review for privilege the documents subpoenaed from third parties.  The day after that order was issued, Mr. McCarthy emailed Bishop Ricken demanding, among other things, that he not provide any documents to his counsel.  Several other communications evidence Mr. McCarthy's quest to persuade church officials to institute a canonical procedure that would serve as a basis for his request to stay this litigation.

Distribution:

Marilyn A. Cramer
THE CRAMER LAW GROUP, LLC
marilyn.cramer@gmail.com

Christina Laun Fugate
ICE MILLER LLP
christina.fugate@icemiller.com

Michael Joseph Lewinski
ICE MILLER LLP
michael.lewinski@icemiller.com

Jason A. McNiel
ICE MILLER LLP
jason.mcniel@icemiller.com

Bradley M. Stohry
ICE MILLER LLP
stohry@icemiller.com

Michael A. Swift
MAGINOT MOORE & BECK LLP
maswift@maginot.com

LARRY YOUNG
P.O. Box 996
Lake Zurich, IL 60047