UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **KEVIN B. McCARTHY, et al.,** )  ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | CAUSE NO. 1:08-cv-994-WTL-DML |
| **PATRICIA ANN FULLER, a/k/a SISTER JOSEPH THERESE, et al.,** ) ) ) | |
| Defendants. ) | |

## ENTRY ON THE PLAINTIFFS' RENEWED AND SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE

This cause is before the Court on the Plaintiffs' Renewed and Supplemental Request for Judicial Notice (dkt. no. 317) ("Renewed Request") and a related motion to strike (dkt. no. 392). Both motions are ripe for review and the Court, being duly advised, **GRANTS** the motion to strike and **DENIES** the Renewed Request for the reasons set forth below.

With regard to the motion to strike, after defense counsel missed her original deadline to respond to the Renewed Request, the Court gave her another opportunity to file a response. In what, unfortunately, has become almost the norm in this case, defense counsel missed that deadline as well, filing her response after the extended deadline. The Plaintiffs' motion to strike the Defendants' late response therefore is well-taken and is granted; the Court has not considered the Defendants' response in making its ruling and the Clerk is directed to indicate on the Court's docket that the response (dkt. no. 388) has been stricken.

In their initial Request for Judicial Notice, as the Plaintiffs aptly summarize:

> Plaintiffs asked that the Court take judicial notice of a Declaration signed by Archbishop Tobin, Archbishop Secretary of the Congregation, and Fr. Sebastiano Paciolla, O. Cist., Undersecretary of the Congregation, under the embossed seal of the Congregation. In addition, Plaintiffs asked that the Court take judicial

notice of the following facts that were conclusively established in the Declaration:

- Fuller was a member of the Contemplative Community of the Sisters of the Congregation of the Precious Blood.
- In 1977, the Superior General and Council of the Sisters of the Congregation of the Precious Blood decided to close the Contemplative Community. At that time, the Sisters who were members of that Community sought to form a separate Community.
- In a letter dated October 28, 1978, the remaining members of the Contemplative Community were informed that their request to form a separate Community was denied by the Congregation.
- Fuller claims that she professed private vows on February 11, 1979, but at that time she would have still been bound by her public vows within the Congregation of the Sisters of the Precious Blood, thereby making her alleged private vows invalid.
- On August 11, 1982, a Decree of Dismissal from the Congregation of the Sisters of the Precious Blood was confirmed by the Congregation. By virtue of that Decree, Fuller ceased to be a member of the Sisters of the Congregation of the Precious Blood.
- Fuller is not a member of any religious institute formally recognized by the Catholic Church and, therefore, must not present herself as a Sister of the Roman Catholic Church.

Renewed Request at 2-3.  The Court denied the motion, finding:

With all due respect to Archbishop Tobin, the Court does not believe that judicial notice is appropriate in this instance.  While the Plaintiffs argue that "[t]he Catholic Church's decision cannot be one subject to dispute," the fact is that the Plaintiffs have not demonstrated that the Catholic Church has made a "decision" regarding Fuller's status.  Indeed, the Plaintiffs have not demonstrated that Archbishop Tobin or the Congregation has the authority to make any such "decision," or even that Archbishop Tobin has the authority to speak on behalf of the Congregation.  In fact, in their initial Request the Plaintiffs give the Court no information at all regarding what the Congregation is or what Archbishop Tobin's role is within the Congregation.

Entry on Plaintiffs' Request for Judicial Notice at 2.

In their Renewed Request, the Plaintiffs have attempted to address the concerns expressed by the Court by submitting a Nota Verbale from the Apostolic Nunciature to the United States of America ("the Nunciature") that states that the Congregation "has full

2

competence (jurisdiction) on behalf of the Holy See to make such determination and did so in and through the person of Archbishop Tobin" and that the Congregation "reached its conclusions after investigation specifically regarding the controversy at hand in light of contacts with the local bishop in the United States." The Nunciature asks that "the United States of America and its courts accord full faith and credit to the Declaration as executed by Archbishop Tobin on 21 June 2011." Nota Verbale, Dkt. No. 317, Exh. 1.

The Plaintiffs argue that the Court is bound by the decision of Archbishop Tobin as ratified by the Nunciature:

> Because the concerns about the Congregation's and Archbishop Tobin's authority have been resolved by the Nota Verbale, Plaintiffs submit that the Declaration, as a decision of the Catholic Church, cannot be subject to dispute. *See [Serbian Eastern Orthodox Diocese for U. S. of America and Canada v. Milivojevich,* 426 U.S. 696, 713 (1976)] (proclaiming that civil courts must accept the decisions of religious organizations as binding on them); *see also Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 132 S. Ct. 694, 712 (2012) (Thomas, concurring) (citing *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952)) ("[t]he Constitution guarantees religious bodies 'independence from secular control or manipulation – in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine'").

Renewed Request at 5. The Court believes that the Plaintiffs are attempting to stretch the holding of *Milivojevich* too far, however. The holding of that case is that "the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters.[1] When this choice is exercised and ecclesiastical tribunals are

---

[1] The Plaintiffs are incorrect when they argue that "it is clear under the rule in *Milivojevich* that the Vatican does not have any obligation to explain its 'applicable process'" in order for a decision of the Church to be binding on a court. There is no way for a court to know whether a particular decision is of the type that is entitled to recognition if the court does not

3

created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them." *Milivojevich,* 426 U.S. at 725. No "internal dispute" has been "adjudicated" with regard to Fuller's status within the Catholic Church, however. More importantly, because the Catholic Church is not a party to this case, and nothing that happens in this case will affect Fuller's relationship with or rights vis-a-vis the Catholic Church, the Court does not believe that the Constitution is implicated by any ruling or finding in this case. In other words, if the jury ultimately decides that Fuller is a Catholic nun, that decision simply will not affect the Catholic Church in any way.

  The proper question, therefore, is not whether the Court is required by the Constitution to accept the facts set forth in the Declaration as conclusively established for purposes of this litigation, but rather whether it is appropriate to take judicial notice of those facts. That question is governed by Federal Rule of Evidence 201(b)(2), which provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." The Court remains unconvinced that the requirements of judicial notice have been satisfied in this case.

  The problem is that the determination set forth in the Declaration was not made for any religious purpose, but rather was made at the request of Plaintiff Kevin McCarthy in response to what can charitably be referred to as a rather one-sided request. *See* Exhibit D to Dkt. No. 151

---

know what process a hierarchical religious organization has established for making decisions. For example, if the Catholic Church provided for certain decisions to be made by the Congregation, the decision of a local priest would not be binding on a court.

(expressing McCarthy's strong opinions regarding Fuller).  In McCarthy's letter requesting that a declaration be issued, he states that Fuller claims to be a nun "by virtue of 'private vows' taken at the cloister from which [she] was exclaustrated while she was still subject to public vows as a member of the Congregation of the Precious Blood of Sisters."  The Declaration, in turn, states that "Patricia Ann Fuller claims that she professed private vows on February 11, 1979.  At that time she would have still been bound by her public vows within the Congregation of the Sisters of Precious Blood, thereby making her private vows invalid."  This statement implies that if Fuller had made private vows after she was released from her public vows, those vows would not have been invalid; in other words, it is not the nature of the private vows Fuller professes to have taken, but the timing of them.  However, Fuller's position in this litigation is that she repeated her private vows after she was released from her public vows.  There is no indication that Archbishop Tobin was aware of this assertion when he issued the Declaration, and therefore there is no way of knowing whether his decision would have been different had he been aware of it (and found it credible).  This, coupled with the fact that the determinations set forth in the Declaration were not made as a result of an adjudication made for religious or church governance purposes, but rather as a result of a request from a private litigant for litigation purposes based–to what extent it is not clear–on information from (and argument by) that private litigant, leads the Court to that the Plaintiffs have not demonstrated that judicial notice is appropriate in this instance.  Accordingly, the Renewed Request is denied.

    SO ORDERED:  05/23/2012

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

5

**Copy by United States Mail to:**

**Larry Young**
**P.O. Box 996**
**Lake Zurich, IL 60047**

Copies to all counsel of record via electronic notification