UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN B. McCARTHY, et al., | ) |
| | ) |
|   Plaintiffs, | ) |
| | ) |
|     vs. | ) CAUSE NO. 1:08-cv-994-WTL-DML |
| | ) |
| PATRICIA ANN FULLER, a/k/a SISTER JOSEPH THERESE, et al., | ) |
| | ) |
|   Defendants. | ) |

### ENTRY ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This cause is before the Court on the Counterclaim Defendants' Motion for Partial Summary Judgment with Regard to Fuller's Claims Relating to Counterclaim Defendants' Distribution of the Medallions (dkt. no. 628). The motion is fully briefed and the Court, being duly advised, **GRANTS** the motion to the extent and for the reasons set forth below.

### I.    SCOPE OF THE MOTION

The instant motion was filed pursuant to an order of the Court granting the Counterclaim Defendants leave to file a motion for summary judgment raising "only the legal issue of whether the unauthorized sale of genuine trademarked items can constitute trademark infringement." Dkt. No. 625 at 4. The genuine trademarked items at issue are Our Lady of America religious medallions ("the Medallions") that Counterclaimant Fuller alleges the Counterclaim Defendants stole from her and then sold for their own financial gain.

Fuller argues[1] that the Counterclaim Defendants exceeded the scope of the Court's order

---

[1] The Court recognizes that Defendant Paul Hartman purports to "join in" Fuller's response to the motion. Inasmuch as the motion does not implicate any of the claims against Hartman, the fact that he agrees with Fuller's position on the issues therein simply is not relevant to the Court's consideration of those issues.

by moving for summary judgment not only on the trademark infringement issue, but also on the issue of whether the Counterclaim Defendants' sale of the Medallions violated the Ohio Deceptive Trade Practices Act. The Court agrees with Fuller that the Counterclaim Defendants have overreached in their motion and, although the Court does not find the Counterclaim Defendants' actions to be nearly as egregious as Fuller does, the Court has limited its review of the Counterclaim Defendants' motion to the trademark infringement issue only.

## II. DISCUSSION

As noted above, the only issue properly before the Court is whether the sale—even if unauthorized—of genuine items—even if the seller obtained those items illegally—can constitute trademark infringement under the Lanham Act, 15 U.S.C. § 1051 et seq. The Counterclaim Defendants—citing the "first sale doctrine"—argue that it cannot. Fuller argues that the first sale doctrine does not apply in situations in which the trademarked goods in question were not sold by the trademark holder at all, but rather were stolen or otherwise obtained illegally. This argument is understandable, given the common expression of the doctrine: "[U]nder the 'first sale' doctrine, 'the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product.'" *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009) (quoting *Australian Gold*, *Inc. v. Hatfield*, 436 F.3d 1228,1240-41 (10th Cir. 2006)). Given this language, it is not unreasonable for Fuller to argue that in the absence of a "first sale" by the trademark holder, the "first sale doctrine" does not apply.[2]

---

[2]The Court notes that Fuller's reliance on *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2013), fails to recognize the difference between copyright law, which was at issue in that case, and trademark law. *See, e.g.*, *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 439 (1984) (noting the existence of "fundamental differences between copyright law and trademark law").

That being said, however,

> [t]hose who resell genuine trademarked products are generally not liable for trademark infringement.  *See Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001); *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987). "The reason is that trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold." *NEC Elecs.*, 810 F.2d at 1509 (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368–69, 44 S.Ct. 350, 68 L.Ed. 731 (1924)). *See also United States v. Giles*, 213 F.3d 1247, 1252 (10th Cir. 2000)("'[T]he purpose of trademark law is ... to guarantee that every item sold under a trademark is the genuine trademarked product, and not a substitute.'") (quoting *Gen. Elec. Co. v. Speicher*, 877 F.2d 531, 534 (7th Cir.1989)).

*Beltronics USA*, 562 F.3d at 1071-72.  "It is a tautology that a consumer purchasing genuine goods receives exactly what the customer expects to receive:  genuine goods.  The consumer is not confused or deceived about the source or quality of the product."  *McCoy v. Misuboshi Cutlery, Inc.*, 67 F.3d 917, 923-24 (Fed. Cir. 1995) (citing *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.3d 587, 591 (5th Cir. 1993)).  Therefore, with regard to the sale of the Medallions that the Counterclaim Defendants obtained from Fuller—regardless of how they were obtained—those who purchased the Medallions received a genuine Medallion, not a substitute.  There was no confusion with regard to the origin of each Medallion; the trademark indicates that it originated with Fuller, and it did, in fact, originate with Fuller.

Nevertheless, Fuller argues that

> [d]uring the course of unlawfully selling the trademarked medallions of Our Lady of America®,[3] which they stole from Sister Therese, and converted to their own benefit, use, and profit, Langsenkamp, McCarthy, and BVM deliberately deceived and caused confusion among the public as to their affiliation, connection, and association with Sister Therese, and her Our Lady of America Center, as well as to the origin, sponsorship and approval by Sister Therese and her our Lady of America Center of their commercial activities. This conduct constitutes trademark infringement, even in cases involving genuine items.

---

[3]The Court expresses no opinion about the propriety of Fuller's use of the ® symbol in this context.

3

Fuller's Brief at 29. Fuller cites no authority for this legal theory, however, and fails to explain how the act of selling the genuine Medallions constitutes deliberate deception as to Fuller's approval of the Counterclaim Defendants' various activities. Neither does she explain how the "linking" of the genuine Medallions with "competing counterfeit merchandise and activities" renders the sales of the genuine Medallions trademark infringement. "It is not this court's responsibility to research and construct the parties' arguments," *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011), and the Court declines to do so here.

### III.   CONCLUSION

The Counterclaim Defendants' motion for partial summary judgment is **GRANTED** to the following extent: the Court finds, as a matter of law, that the Counterclaim Defendants' sale of the Medallions that they obtained from Fuller did not constitute trademark infringement. This ruling does not apply to the sale of any other Medallions or religious jewelry, if such sales occurred. It also does not address in any way any other legal theory related to the sale of Fuller's Medallions.[4] Finally, it does not address the issue of whether any other activities by the Counterclaim Defendants constitute trademark infringement.

SO ORDERED:   11/15/2013

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[4] Of course, to the extent that any of those other legal theories requires a finding that Fuller's trademark rights were infringed, the Court would not expect Fuller to pursue those particular theories given this ruling.

**Copy by United States Mail to:**

**LARRY YOUNG
P.O. Box 996
Lake Zurich, IL 60047**


Copies to all counsel of record via electronic notification