UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **KEVIN B. McCARTHY, et al.,** | ) | |
| | ) | |
|   Plaintiffs, | ) | |
| | ) | |
|    vs. | ) | CAUSE NO. 1:08-cv-994-WTL-DML |
| | ) | |
| **PATRICIA ANN FULLER, a/k/a SISTER** | ) | |
| **JOSEPH THERESE, et al.,** | ) | |
| | ) | |
|   Defendants. | ) | |

## ENTRY REGARDING RULE 50 MOTIONS AND OTHER MATTERS

During the course of the trial of this matter, the Court granted in part the Counterclaim Defendants' motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) and took the remainder of the parties' Rule 50 motions under advisement. Those motions are addressed below. In addition, the Court sets forth below more detailed reasons for several other rulings that were made during the course of the trial. Finally, the Court explains below its application of Indiana law to the punitive damages awarded by the jury.

### Ruling Granting the Defendants' Motion to Reconsider

During the course of the trial, the Defendants filed a motion to reconsider (dkt. no. 797) asking the Court to reconsider its ruling excluding evidence of witness Duncan Bonnell's prior criminal conviction. On February 14, 2014, the Court heard argument from both the Plaintiffs and the Defendants on the motion. The Court orally granted the motion to reconsider, ruling that the evidence of the past criminal conviction would be admitted for impeachment purposes. The Court now provides the following written explanation for that ruling.

In preparation for trial, the parties designated portions of depositions to be admitted in lieu of live testimony. The Defendants designated a portion of Bonnell's deposition in which he

admitted that he was convicted in 1996 of a class E felony in New York for misappropriating funds. He testified that he spent 28 months in prison and was released in 1998.

Federal Rule of Civil Procedure 609(a)(2) provides that evidence of a criminal conviction "must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." As the Defendants correctly note, misappropriating insurance premiums involves an act of dishonesty by Bonnell. However, Rule 609(b) imposes a time limit on the use of such evidence:

> This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
>
> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

The Plaintiffs objected to the use of Bonnell's conviction pursuant to Rule 609(b), and the Court, noting that the Seventh Circuit has "said that impeachment outside the rule's ten-year time limit should be permitted only in rare and exceptional circumstances," *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008) (citations omitted), sustained that objection on January 15, 2014, (dkt. no. 764 at 4), ordering the Defendants to remove any reference to Bonnell's conviction from the deposition excerpts to be used at trial. It is that ruling that the Defendants moved to reconsider.

Upon reconsideration, and with the benefit of understanding, in the context of trial, the import of Bonnell's testimony, the Court agrees with the Defendants that the probative value of Bonnell's criminal conviction substantially outweighs any possible prejudice to the Plaintiffs from admitting the evidence. The Plaintiffs' purpose in admitting portions of Bonnell's

2

deposition was solely to discredit the testimony of Defendant Hartman. Accordingly, Bonnell's credibility was critical, as the jury ultimately had to weigh Hartman's testimony against that of Bonnell. *See United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004) ("And when the judge actually ruled on the admissibility of the prior conviction, he properly noted that Redditt's credibility was a critical factor in the case 'in light of the complete contradiction between the defendant's testimony and the testimony of the government witness.' Consequently, the district court judge did not abuse his discretion when he determined that the probative value of the 1992 conviction outweighed any prejudicial effect."). Further, as the Defendants note, the risk of prejudicing the Plaintiffs with evidence of this criminal conviction is limited—the prejudice that results is no more than that which results when a witness is impeached via a different means. In fact, in addressing the motion to reconsider, the Plaintiffs did not argue that the prejudice of admitting the criminal conviction was great.

The Plaintiffs did argue that they did not receive adequate notice pursuant to Rule 609(b)(2), which requires that "the proponent give[] an adverse party reasonable written notice of the intent to use [the criminal conviction to impeach the witness] so that the party has a fair opportunity to contest its use." In this instance, the Court finds that this notice provision has been satisfied. The Plaintiffs did have "a fair opportunity to contest" the use of Bonnell's criminal conviction prior to his testimony being used at trial. This is all the rule requires.

Considering all of the circumstances, the Court determined that its initial ruling regarding the use of Bonnell's conviction for impeachment purposes was incorrect. Accordingly, the Court granted the Defendants' motion to reconsider and permitted the testimony to be offered at trial.

**Ruling Excluding the Defendants' Summary Exhibits**

The Court sustained the Plaintiffs' objection to Defendants' Exhibit Nos. 4555, 4556,

4557, and 4558, each of which was offered as a summary to prove the content of Exhibit 4204 pursuant to Federal Rule of Evidence 1006. Exhibit 4204 consisted of a voluminous number of check stubs produced by the BVM Foundation. Exhibit Nos. 4555, 4556, 4557, and 4558 consisted of a spreadsheet prepared by Hartman, sorted in different ways, that set forth for each check stub the check number, Bates number, date, amount, payee, and a "code" assigned by Hartman to indicate which category he believed the payment fell into.

Prior to trial, the Court ruled that Exhibit 4204 could not be admitted as a single exhibit; rather, each check stub that that the Defendant demonstrated was relevant would be admitted as its own exhibit, and those exhibits should be numbered 4204A, 4204B, etc. At trial, the Defendants again argued that all of the check stubs were relevant[1] and therefore the summary exhibits based upon them also were relevant.[2] The first problem with that argument is that the summary exhibits did not simply summarize the information contained on the check stubs; rather, they included Hartman's analysis regarding that information. This is obviously so given the fact that one of Hartman's codes was "bribe"—certainly none of the check stubs, on its face, indicated that the check was a bribe. Indeed, defense counsel acknowledged that Hartman performed analysis in creating the spreadsheet, arguing that this made the exhibits more probative than the summary offered by the Plaintiffs, which was created by a paralegal who simply input data without any analysis. But Hartman, as a fact witness, was not entitled to give his opinion that, for example, certain checks written by the BVM Foundation were not charitable

---

[1]The Court again ruled that Exhibit 4204 would not be admitted in its entirety, but that the Defendants could offer specific check stubs that they showed were relevant. Despite resting their case subject to offering any relevant portions of Exhibit 4204, the Defendants failed to make any such offer prior to the conclusion of the trial.

[2]The Plaintiffs objected to the summary exhibits on several grounds, including authenticity. The Court believes that the Defendants would have been able to establish authenticity based upon Hartman's anticipated testimony that the check stubs in 4204 were all produced by the BVM Foundation.

4

donations but rather bribes, especially when that opinion was couched as simply summarizing check stubs produced by the BVM Foundation.[3]

An additional problem with these exhibits is that even if they had been proper summaries, the Defendants did not demonstrate their relevance to any of the issues in this case. Defense counsel argued that the percentage of distributions to McCarthy demonstrated that the BVM Foundation was not in compliance with the laws applicable to a 501(c)(3) corporation, but was unable to articulate how—even assuming there was evidence to support that allegation—that non-compliance was relevant to any of the claims in this case. She argued that it was relevant to Fuller's fraud claims, but there was no evidence that Fuller relied on the BVM Foundation's compliance with tax laws when she made payments to it. Defense counsel conceded that she intended to argue during her closing that the summaries demonstrated that the Plaintiffs had committed tax fraud and money laundering; that argument would have been improper, as it would have had no evidentiary basis, and it would not have been appropriate for counsel to attempt to impeach the Plaintiffs based upon nothing but her own assertion that they had committed crimes.

Similarly, Exhibit 4730 purported to compare the revenue claimed by the BVM Foundation with the actual revenue set forth in its tax returns. The problem with that exhibit is that defense counsel was unable to articulate how the BVM Foundation's total revenue was relevant to any issues in this case. The "claimed revenue" referenced in the exhibit was revenue from Our Lady of America devotional items, while the "actual revenue" consisted of all revenue received by the BVM Foundation, without distinguishing whether any particular amount

---

[3]The Court admitted evidence of specific payments made to members of the clergy who testified or otherwise were involved in the events at issue in this case, as those payments were relevant to the general issue of bias.

5

received had any relation to the Our Lady of America Devotion or whether it was instead, for example, a donation from someone who wanted to help support McCarthy's studies in Rome. Far from being helpful to the jury, then, admission of this exhibit would have been misleading.

### Rule 50 Motions Granted During Trial

The Court granted in part the Counterclaim Defendants' Rule 50 motions prior to submitting the case to the jury. The Court hereby provides the reasons for those rulings.

As an initial matter, the Court notes that in making these rulings the Court did not consider the written submission made by defense counsel with regard to the Rule 50 motions because it was untimely. The parties all moved orally for judgment as a matter of law and presented lengthy oral arguments on the afternoon of Thursday, February 27, 2014. That same afternoon, the Plaintiffs filed a brief in support of their motion. The Court gave defense counsel until noon on Sunday, March 2, 2014, to file a brief in opposition to the Plaintiffs' motion if she wished to do so. The Court emphasized several times, both on and off the record, that the deadline was noon—that a brief filed at 12:01 p.m. would be late and would not be considered. The repeated reminders were prompted by defense counsel's pattern of late filings during the course of this case, which had been the subject of numerous admonitions by the Court.[4] *See,*

---

[4]While the Court considered many of defense counsel's late filings, some of her missed deadlines had substantial consequences, most notably the forfeiture of the right to object to the final jury instructions. The original deadline to file proposed jury instructions was April 10, 2012; when the Defendants missed that deadline, the Court extended it to May 15, 2012, because, frankly, input from counsel typically is very helpful to the Court in crafting jury instructions. At that time, trial was scheduled to begin June 4, 2012. When a continuance of that trial date was necessitated by an appeal filed by the Plaintiffs, the Court once against extended the deadline for proposed jury instructions to July 16, 2012, and admonished the Defendants that the failure to meet that deadline would "constitute forfeiture of the right to object to any aspect of the Court's final instructions." Dkt. No. 450. The Defendants filed two motions to extend that deadline; those motions ultimately were denied by the magistrate judge, and the Defendants did not object to that ruling. Nor did defense counsel move for relief from that ruling at any time, despite the fact that the trial of this cause did not commence until well over a year later.

*e.g.,* Dkt. No. 485 at 4 n.1 ("Attorney Marilyn Cramer persists in missing deadlines in this case. While the Court has been willing to overlook many of these failings because they have not prejudiced the opposing parties and have had no practical effect on the Court, Ms. Cramer is once again warned that the Court's patience is not endless and the Court is under no obligation to consider any untimely document."); Dkt. No. 697 at 1 ("In what has become the norm in this case, Defendants' counsel missed a filing deadline. . . . Not for the first time, but hopefully for the last, the Court admonishes defense counsel that its patience is not endless."). Defense counsel filed her brief in opposition to the Rule 50 motions at 12:04 p.m.; accordingly, it was late and, as promised, the Court did not consider it. The Court did, of course, consider the oral arguments of defense counsel.

The Court granted judgment as a matter of law in favor of Defendant McCarthy[5] with regard to Fuller's theft, fraud, and conversion claims based upon the $50,000 payment she made to Bridget Kaufman. Fuller's testimony was unequivocal: that payment was a gift to the Kaufmans that was given out of Fuller's affection for them and based upon her compassion for the fact that they had a very ill newborn baby. She further testified, unequivocally, that it "had nothing to do with McCarthy" and she was not asking that McCarthy pay the money back.

---

Nonetheless, the Court did permit defense counsel to make suggestions regarding the jury instructions during both the formal and informal discussions held during trial; in addition, defense counsel fully participated in the extensive interactive process that led to the crafting of the verdict forms that were used in this case.

[5]This claim originally was asserted against Defendants McCarthy and Langsenkamp; however, in the course of discussing jury instructions and verdict forms, Fuller voluntarily dismissed the claim as to Langsenkamp. The Court notes that during the same discussions Fuller voluntarily dismissed the following additional claims: (1) all claims against Young relating to the rosewood crucifix; (2) all claims against Young relating to the www.ourladyofamerica.com website content and subscriber database; (3) all claims against Young relating to the www.ourladyofamerica.org registered domain name; (4) her cyberpiracy claim against Young; (5) her claim for implied contract against Young; (6) her claim for unjust enrichment against Young; (7) all claims against the BVM Foundation relating to the rosewood crucifix; and (8) all claims against the BVM Foundation relating to the payments to Alan Kershaw.

Based upon this testimony, no reasonable jury could have found that McCarthy committed fraud, theft, or conversion with regard to that payment.

Next, the Court granted judgment as a matter of law in favor of Defendant Langsenkamp Family Apostolate with regard to all of Fuller's claims against it. The evidence at trial was unrefuted that the Langsenkamp Family Apostolate is not a legal entity of any kind, and Fuller's counsel was unable to articulate any evidence that would support a finding that it is an unincorporated association that would be suable under Indiana Trial Rule 17 (and therefore suable under Federal Rule of Civil Procedure 17(b)(3)). Rather, the evidence is uncontroverted that "Langsenkamp Family Apostolate" is simply a name that Defendant Langsenkamp uses to describe the spiritual or charitable activities of himself and his family. Indeed, Fuller's counsel argued that Mr. Langsenkamp's use of the name the Langsenkamp Family Apostolate was somehow fraudulent vis-à-vis the public at large because there was no such thing. Accordingly, the proper Defendant for any actions taken by Defendant Langsenkamp was Defendant Langsenkamp.

Next, the Court granted judgment as a matter of law in favor of Defendant Young with regard to Fuller's claims for theft, fraud, and conversion relating to the Latrobe/Archival statue. Fuller's counsel was unable to articulate any factual basis for those claims; there is simply no evidence in the record that Young ever exercised control—unauthorized or otherwise—of the statue or assisted anyone else in doing so. Accordingly, no reasonable jury could have found for Fuller on that claim as to Young.

Finally, the Court granted judgment as a matter of law in favor of all of the Defendants with regard to Fuller's claims for infringement of Copyright No. VAu 297-438 by manufacturing, importing, displaying, and/or promoting the BVM Statue. While Fuller's

counsel apparently believed that this copyright somehow gave Fuller exclusive rights with regard to *any* statue of Our Lady of America, that belief is based on a misunderstanding of copyright law. On its face, Copyright No. VAu 297-438 protects a derivative work–a statue by Donna Mae Halsted that was an adaptation of a painting by Sister Neuzil. The parties agree the painting in question is the artwork that appears on the front of the 1984 Diary, which is protected by the other copyright at issue in this case, Copyright No. TXu 366-731. There was no evidence in the record from which the jury could determine what original elements were added by Halsted in creating the statue and therefore what is protected by Copyright No. VAu 297-438. There also was no evidence in the record that the artist who created the BVM Statue ever saw the Halsted statue; in fact, there essentially was no evidence at trial regarding the Halsted statue at all. Without such evidence, there was simply no basis for the jury to determine whether that copyright had been infringed. That said, the Court amended the verdict forms—without objection from the Plaintiffs—to ask the jury to determine whether the BVM Statue infringed Copyright TXu 366-731, because the evidence at trial would have supported a finding that the images and descriptions in the Diary—the work protected by that copyright—were used to create the BVM Statue.

### Rule 50 Motions Taken Under Advisement

In light of the jury's verdict, all of the parties' Rule 50 motions that the Court took under advisement are moot except for two: Hartman's motion with regard to the defamation claims of McCarthy and Langsenkamp and the motion of Counterclaim Defendants McCarthy, Langsenkamp, and the BVM Foundation with regard to Fuller's claim for unjust enrichment.[6]

With regard to the former, the Court finds that there is ample evidence in the record to

---

[6] In making this ruling, in order to ensure that it was fully informed regarding Fuller's claims, the Court considered Fuller's untimely written response to the Rule 50 motion.

9

support both McCarthy's and Langsenkamp's defamation claims against Hartman. While Hartman's position was that he had reason to believe that each of the statements at issue were true, the evidence presented at trial would support a finding that Hartman failed to exercise reasonable care in determining the truth of each statement before he published it on his blog. Hartman also argued that there was no evidence of damages caused by any defamatory statement; however, with regard to defamation per se, which the jury found to have occurred, damages are presumed. Accordingly, Hartman was not entitled to judgment on the evidence with regard to the defamation claims.

With regard to Fuller's claim for unjust enrichment, the Court unfortunately did not notice prior to discharging the jury that the jury did not answer Yes or No at Step 3 of Verdict Form 27, but rather simply put a slash through the question. Accordingly, it is not clear whether the jury made a finding in favor of Counterclaim Defendants McCarthy, Langsenkamp, and the BVM Foundation on Fuller's unjust enrichment claim, or whether the jury inadvertently failed to address the claim. The Court, therefore, will address the Counterclaim Defendants' Rule 50 motion with regard to that claim.

Under Indiana law, "[t]o prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. One who labors without an expectation of payment cannot recover in quasi-contract [another name for unjust enrichment]." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408-09 (Ind. 1991). As the Seventh Circuit has explained:

> the legal term "unjust enrichment" has two referents, a remedial and a substantive. The remedial referent is to a situation in which a tort plaintiff asks not for the damages he has sustained but instead for the profit that the defendant obtained from the wrongful act. . . . In its substantive sense, unjust enrichment or

restitution refers primarily to situations in which either the defendant has received something that of rights belongs to the plaintiff (for example, he received it by mistake—or he stole it), or the plaintiff had rendered a service to the defendant in circumstances in which one would reasonably expect to be paid (and the defendant refused to pay) though for a good reason there was no contract.

*Thomas v. UBS AG*, 706 F.3d 846, 853-54 (7th Cir. 2013) (citations omitted).

In this case, the only "measurable benefits" conferred by Fuller on the Counterclaim Defendants consist of money paid to them and items given to them. As in *Thomas*, however, Fuller also asserted tort claims—specifically theft, fraud, and conversion—with regard to those items and payments, making her unjust enrichment claim redundant. *Cf. id.* at 853 ("No injustices are alleged other than those alleged elsewhere in the complaint . . . making the unjust enrichment claim redundant."). Fuller's brief in response to the Rule 50 motion makes the point abundantly clear, as she argues: "The fatal flaw in their entire argument concerning unjust enrichment is their faulty starting premise that the property at issue constituted gifts. This litigation does not concern gifts. *It concerns the property that the Movants stole.*" Dkt. 814 at 17 (emphasis added). In addition, there is no evidence from which a reasonable jury could have determined that Fuller made any of the payments at issue with the expectation of receiving something in return. It is clear that she eventually regretted making the payments, but unjust enrichment requires more than remorse in hindsight; it requires a showing of an expectation of receiving a benefit in return at the time the payments were made. There is simply no evidence of any such expectation in this case. Accordingly, the Court **GRANTS** judgment as a matter of law in favor of McCarthy, Langsenkamp, and the BVM Foundation on Fuller's unjust enrichment claim.

**Punitive Damages**

The jury awarded Plaintiff Langsenkamp $50,000 in compensatory damages and

$1,000,000 in punitive damages on his defamation claim against Defendant Hartman. Pursuant to Indiana Code 34-51-3-4, an award of punitive damages may not be more than the greater of three times the amount of compensatory damages awarded in the action or $50,000. Accordingly, in its final judgment the Court will award Langsenkamp $150,000 in punitive damages. In addition, as required by Indiana Code 34-51-3-6, the Court directs Defendant Hartman to notify the office of the Indiana Attorney General of the punitive damage awards against him, and the judgment will direct Hartman to pay the punitive damages awards to the clerk of this court, who will then distribute it as required by Indiana Code 34-51-3-6(c).

SO ORDERED: 03/19/2014

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by United States Mail to:**

LARRY YOUNG
P.O. Box 996
Lake Zurich, IL 60047

Copies to all counsel of record via electronic notification